

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-31-2005

# Kuswadi v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3644

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Kuswadi v. Atty Gen USA" (2005). *2005 Decisions.* Paper 311.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/311

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-3644

LENA KUSWADI,
Petitioner

v.

Attorney General of the United States,

Respondent

On Appeal from an Order entered by
The Board of Immigration Appeals
No. A95-353-337

Submitted Under Third Circuit LAR 34.1(a)
September 27, 2005

Before: ALITO, AMBRO, and LOURIE,** Circuit Judges

(filed: October 31, 2005)

OPINION

_____

    ** Honorable Alan D. Lourie, Circuit Judge for the United States Court of
Appeals for the Federal Circuit, sitting by designation.

AMBRO, Circuit Judge:

Lena Kuswadi petitions for review of an order of the Board of Immigration Appeals ("BIA") affirming an immigration judge's ("IJ's") denial of her application for asylum, withholding of removal, and claim under the United Nations Convention Against Torture ("CAT"). The IJ concluded that Kuswadi had not offered a credible account of adverse treatment that would constitute persecution within the meaning of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101(a)(42)(a), and therefore concluded that she failed to establish eligibility for asylum and, by extension, withholding of removal under the INA and withholding under the CAT. The BIA found that the IJ's adverse credibility finding was not clearly erroneous and that he correctly found that Kuswadi's remaining allegations did not constitute persecution. For the reasons that follow, we deny the petition for review.

## I. Facts and Procedural Background

Because we write for the parties, we only briefly recount the relevant facts. Kuswadi is a citizen of Indonesia who is ethnically Chinese and a Buddhist. She entered the United States on November 18, 2000 on a nonimmigrant visa, which she overstayed. On November 14, 2001 Kuswadi filed an application for asylum, withholding of removal under the INA, and withholding under the CAT. She alleged that she suffered numerous acts of harassment and discrimination at the hands of Muslims and ethnic Pribumis (the majority religious and ethnic groups in Indonesia), including: (1) anti-Buddhist statements

2

made by Muslim preachers at a local mosque; (2) insults and acts of violence, including an attempted drowning, by Pribumi students while she was in school; and (3) an extortion scheme directed at her parents by public officials, as a result of which the family had to pay a bribe to have her father released from jail. Most seriously, Kuswadi alleged that on April 10, 2000 she was abducted by a taxi driver who made anti-Chinese statements and then attempted to rape her. According to Kuswadi's asylum application, she was saved when several Chinese Catholic high school students intervened. She also asserted that Pribumi rioters attacked her family's home during an anti-Chinese riot in Jakarta in May 1998, and that Pribumis subsequently accosted and harassed her and her brother.

At her hearing before the IJ, Kuswadi's testimony was consistent with the allegations contained in her asylum application, with the exception that she could not recall the identity of the individuals who intervened to prevent the taxi driver from raping her. This failure led the IJ to conclude that her allegations regarding the attempted rape were not credible. As that was the only incident that could have sustained a finding of past persecution, and the IJ did not find any evidence of a pattern of persecution against Chinese Buddhists in Indonesia, he denied Kuswadi's application for asylum and, by extension, her request for withholding under the INA and withholding under the CAT. He did, however, grant Kuswadi voluntary departure from the United States.

Kuswadi appealed to the BIA, which affirmed the IJ's decision. The BIA determined that the IJ did not clearly err in finding Kuswadi's account of the attempted

3

rape not credible in light of her failure to recall key facts about the identity of her rescuers, and agreed with the IJ that the remainder of Kuswadi's allegations did not rise to the level of persecution. The BIA granted Kuswadi an additional 30 days in which to depart the United States voluntarily. On November 4, 2004, we declined to stay the deadline for Kuswadi to depart voluntarily, and that deadline has since passed.

## II. Jurisdiction and Standard of Review

We have jurisdiction over Kuswadi's petition for review under 8 U.S.C. §§ 1252(b)(2) and (d). We review the BIA's affirmance of an IJ's factual findings, including its determination of whether an alien was subject to persecution or has a well-founded fear of persecution, under a substantial evidence standard. Shardar v. Ashcroft, 382 F.3d 318, 323 (3d Cir. 2004). The BIA's affirmance of the IJ's credibility determinations is also reviewed under this standard. See Cao v. Att'y Gen. of U.S., 407 F.3d 146, 152 (3d Cir. 2005) ("The credibility determination, like all IJ factual findings, is subject to substantial evidence review."). In conducting this analysis we consider the record as a whole and will reverse only if "'[a] reasonable adjudicator would be compelled to conclude to the contrary.'" Shardar, 382 F.3d at 323 (quoting 8 U.S.C. § 1252(b)(4)(B)).

## III. Discussion

To succeed in establishing her eligibility for asylum or withholding of removal, Kuswadi must first demonstrate that she has been subject to past persecution or has a well-founded fear of future persecution based on her race, religion, nationality,

4

membership in a particular social group, or political opinion. See, e.g., Li v. Att'y Gen of U.S., 400 F.3d 157, 162 (3d Cir. 2005) (quoting 8 U.S.C. § 1101(a)(42)(a)). We have defined persecution as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Id. at 167 (internal citation and quotation marks omitted). In light of the factual findings the BIA upheld, we conclude that Kuswadi has not established she suffered adverse treatment that rises to the level of persecution, nor has she established that she has a well-founded fear of future persecution.

First, a reasonable adjudicator could conclude that Kuswadi's failure to recall significant facts about the attempted rape — namely, the identity of her rescuers and especially their Chinese ethnicity — rendered her account of the incident not credible. We have stated that "[a]dverse credibility determinations based on speculation or conjecture, rather than on evidence in the record, are reversible." Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002). Although "minor inconsistencies and minor admissions that reveal nothing about an asylum applicant's fear for his safety are not an adequate basis for an adverse credibility finding," we uphold credibility determinations that involve the "heart of the asylum claim" and are supported by substantial evidence such that a reasonable adjudicator would not be compelled to reach a contrary result. Id. (internal citations and quotation marks omitted).

The adverse credibility finding at issue here was neither speculative nor related to

5

a minor inconsistency. In her asylum application, Kuswadi was very specific about who rescued her: she stated that Chinese Catholic high school students intervened and prevented the rape from occurring. Indeed, this information was important to her asylum claim because it showed that she avoided being raped by a member of the majority ethnic and religious class only by the timely assistance of members of her own minority ethnic group and another minority religious group. At her hearing, however, despite being asked questions about the incident on direct examination, cross examination, and by the IJ directly, Kuswadi could not recall anything about the ethnicity or religion of her rescuers. Although Kuswadi testified she was having difficulty remembering because she was nervous, we believe the BIA was well within its discretion in affirming the IJ's reasonable conclusion that Kuswadi's failure of memory was not because she was nervous but rather indicated that this part of Kuswadi's narrative was not sufficiently reliable to satisfy her burden of proof.

We also reject Kuswadi's argument that by granting her voluntary departure — one of the preconditions for which is that the applicant not give false testimony, see 8 U.S.C. § 1101(f)(6) — the IJ contradicted his determination that Kuswadi's testimony regarding the alleged rape was not credible. We agree with the Fifth Circuit that "[a] finding that testimony lacked credibility does not alone justify the conclusion that false testimony has been given. False testimony means knowingly giving false information with an intent to deceive. A lack of credibility does not necessarily stem from a

6

conclusion that the speaker intends to deceive." Rodriguez-Gutierrez v. INS, 59 F.3d 504, 507 (5th Cir. 1995). Nothing in the record indicates that the IJ affirmatively concluded that Kuswadi intentionally falsified her testimony about the alleged rape; the record only shows that the judge did not believe she satisfied her burden of proving through consistent testimony that the incident took place.

Accepting the BIA's conclusion that Kuswadi's testimony regarding the attempted rape was not credible, we are left to consider her remaining allegations of persecutory acts. None of the alleged incidents she describes — including being the target of anti-Chinese and anti-Buddhist statements, harassment by Pribumis at school and on the street, an allegation that her school classmates attempted to drown her over 20 years ago, the alleged extortion of her family by local officials, and damage to her family's home during a riot in 1998 — rises to the level of persecution as we have defined the term. Persecution requires an alien to prove more than mere harassment or annoyance, see Manzoor v. U.S. Dep't of Justice, 254 F.3d 342, 346 (1st Cir. 2001), and although we have never offered an explicit definition of harassment in the asylum context, we believe that harsh words and insults, acts of discrimination, and even at times threats unaccompanied by imminent suffering or harm, will ordinarily constitute harassment and not persecution. See Li, 400 F.3d at 164 ("[T]hreats standing alone . . . constitute persecution in only a small category of cases, and only when the threats are so menacing as to cause significant actual 'suffering or harm.'" (internal citation and quotation marks

omitted)).  Such is the case here.  As for the only act of violence Kuswadi credibly claims to have suffered — an attempted drowning at the hands of her Pribumi classmates — we reiterate that this incident occurred more than two decades ago and Kuswadi has offered no credible evidence that similar acts of violence have occurred since.  We therefore do not believe a reasonable adjudicator would be compelled to find that this incident, without more, satisfies Kuswadi's burden of proving persecution.

Kuswadi also raises the novel argument that the BIA's decision should be reversed because she has suffered "cumulative persecution," that is, that the adverse treatment she suffered in the past amounts to persecution in the aggregate even if the individual acts were not persecutory.  Although we do not foreclose the possibility that, in certain situations, repeated discrimination, harassment, and threats might become so pervasive as to constitute a "threat to life or freedom," see id. at 167, we do not believe the record in this case compels any reasonable adjudicator to find that Kuswadi has suffered persecution.  She has not, for example, alleged that cumulative discrimination and threats against Chinese Buddhists, and against her in particular, have ever been so pervasive or menacing that her life or freedom have been placed in actual jeopardy.  Kuswadi's "cumulative persecution" argument thus fails.

We also note that the BIA did not err in rejecting Kuswadi's claim that, regardless whether she suffered persecution in the past, she has a well-founded fear of future persecution.  As stated above, none of the incidents about which Kuswadi offered

8

credible evidence would compel a reasonable adjudicator to conclude that she has suffered past persecution in Indonesia due to her ethnic or religious identity. She is not, therefore, entitled to the regulatory presumption of a well-founded fear of future persecution. See 8 C.F.R. § 1208.13(b)(1). Kuswadi nonetheless contends she has provided sufficient evidence of adverse treatment directed at Chinese Buddhists in Indonesia to compel a reasonable adjudicator to conclude that she has a well-founded fear of being subjected to persecution if returned to Indonesia. We disagree. The IJ concluded, and the BIA agreed, that Kuswadi's evidence related largely to Chinese Christians, a minority group of which she is not a part, and that such evidence did not satisfy her burden of proof. We agree with the BIA that the record in this case is largely devoid of evidence of persecution directed at Chinese Buddhists. Although Kuswadi provided the IJ with some news reports related to discrimination and harassment against the Chinese minority in Indonesia, we agree with the BIA that the IJ correctly found that these do not contain evidence of ethnic persecution. Kuswadi's evidence of religious persecution, as stated, concerned largely the plight of Christians, not Buddhists. Based on this record, a reasonable adjudicator would not be compelled to find that Chinese Buddhists are subjected to widespread persecution in Indonesia and that Kuswadi, by inference, has a well-founded fear of persecution if returned.

Because we conclude that Kuswadi has not satisfied her burden of proving past persecution or a well-founded fear of future persecution sufficient to qualify for asylum,

9

we necessarily conclude that she has not satisfied the more stringent requirements for withholding of removal. See Paripovic v. Gonzales, 418 F.3d 240, 246 (3d Cir. 2005). As for Kuswadi's CAT claim, we disagree with the BIA that Kuswadi's failure to satisfy her burden of proving eligibility for asylum and withholding of removal necessarily means she has also failed to establish eligibility for withholding under the CAT. As the Second Circuit has held, an applicant's CAT claim is not "necessarily precluded because he had failed to carry his burden of proof with respect to his asylum claim. Because the CAT inquiry is independent of the asylum analysis, . . . the BIA's decision with respect to an alien's claims for asylum and withholding of removal pursuant to the INA should never, in itself, be determinative of the alien's CAT claim." Ramsameachire v. Ashcroft, 357 F.3d 169, 184-85 (2d Cir. 2004); see Kamalthas v. INS, 251 F.3d 1279, 1283 (9th Cir. 2001) ("[C]laims for relief under the Convention are analytically separate from claims for asylum under INA § 208 and for withholding of removal under INA § 241(b)(3). . . . [A] claim under the Convention is not merely a subset of claims for either asylum or withholding of removal."). We agree that "[u]nlike an asylum claim, the CAT claim lacks a subjective element, focuses broadly on torture without regard for the reasons for that treatment, and requires a showing with respect to future, rather than past, treatment. . . . Consequently, an alien's CAT claim may be established using different evidence and theories than the alien's INA claims, [and] [t]he CAT claim therefore must always be considered independently of the resolution of the alien's claims under the

10

INA." <u>Ramsameachire</u>, 357 F.3d at 185.

Nonetheless, we find that the BIA's error is harmless in this case. Kuswadi has not proffered any evidence establishing a likelihood that she will suffer torture if returned to Indonesia. She has therefore failed to satisfy her burden of proof under the CAT.

*        *        *

For the foregoing reasons, Kuswadi's petition for review is denied.